IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES ARTHUR BIGGINS,           )
                                )
              Plaintiff,        )
                                )
      v.                        ) Civ. Action No. 09-862-GMS
                                )
C. DANBERG, et al.,             )
                                )
              Defendants.       )

## MEMORANDUM

The plaintiff, James Arthur Biggins ("Biggins"), an inmate at the James T. Vaughn

Correctional Center ("VCC), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983,

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12010, *et seq.*, and the

Rehabilitation Act, as amended, 29 U.S.C. § 794, *et seq.* (D.I. 1.) He also raises supplemental

state claims. Biggins appears *pro se* and was granted permission to proceed *in forma pauperis*

pursuant to 28 U.S.C. § 1915. (D.I. 13.) The court now proceeds to review and screen the

complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

## I. BACKGROUND

The complaint contains eight counts. Counts One, Three, and Eight raise access to the

courts claims against the defendants C. Kemp ("Kemp"), M. Little ("Little"), Tony Smith[1] ("T.

Smith"), M. Castello[2] ("Castello"), Barrett ("Barrett"), Sieani ("Sieani"), Ramon Carter

("Carter"), Walker ("Walker"), J. Scarborough ("Scarborough"), Trader ("Trader"), Karen

---

[1]The caption of the complaint also names as a defendant P. Smith ("P. Smith"), but the
complaint contains no allegations directed towards P. Smith.

[2]Spelled on the court docket as Costello.

Hawkins ("Hawkins"), and B. Engram ("Engram"); Counts Two, Three, Six, Seven[3], and Eight

raise retaliation claims against the defendants R. Willey ("Willey"), Carter, Louis Gomez

("Gomez"), Sgt. Bailey[4] ("Sgt. Bailey"), Rose ("Rose"), E. Heddinger ("Heddinger"), D. Benson

("Benson"), Little, Murphy ("Murphy"), M. Daum ("Daum"), and Scarborough; Counts Two and

Five raise due process claims against R. Bailey ("R. Bailey"), Benson ("Benson"), and Willey;

Count Four raises excessive force and assault and battery claims against the defendants Sgt.

Bailey and Murphy[5]; and Count Five raises conditions of confinement claims against the

defendants Sgt. Bailey, Carter, and Everett ("Everett"), and a denial of grievances claim against

Dutton[6] ("Dutton").[7]

---

[3]Count Seven refers to the claim as an instigation of inmate assault/retaliation claim against the defendants Carter and Rose.

[4]The caption of the complaint names K. Bailey and R. Bailey, but no Sgt. Bailey. Counts Three, Four, and Five also contain allegations against Sgt. Bailey, with no indication if Sgt. Bailey is K. Bailey or R. Bailey. There are no allegations in the complaint directed towards K. Bailey.

[5]*See supra,* n.4. Count Four does not indicate if defendant Bailey is K. Bailey or R. Bailey.

[6]*See supra,* n.4. Count Five does not indicate if defendant Bailey is K. Bailey or R. Bailey. Count Five is raised against the defendant Dutton - no first name. The caption of the complaint names defendants "M. Dutton" and "R. Dutton." The complaint and its exhibits do not reference R. Dutton. Exhibits to the complaint reference Matthew Dutton, a member of the IGC (i.e., Inmate Grievance Committee).

[7]The remaining defendants are not mentioned in the allegations of Counts One through Seven, but are mentioned either in the caption of the complaint, the footnote to the caption of the complaint or the "Claims For Relief" section of the complaint, paragraphs nineteen through twenty-eight. Additionally, Biggins added L. Savage ("Savage") as a defendant after he filed the complaint. (*See* D.I. 5.)

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Biggins proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

"A separate standard for maliciousness is not as well established." *Abdul-Akbar v. Department of Corr.*, 910 F. Supp. 986 (D. Del.1995), *aff'd*, 111 F.3d 125 (3d Cir.), *cert. denied*, 522 U.S. 852 (1997) (table decision). A court that considers whether an action is malicious

-3-

must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure, or harass the defendant. *Deutsch*, 67 F.3d at 1086. Other circuits have offered more objective instances of malicious claims. For example, a complaint is malicious when it "duplicates allegations of another [ ] federal lawsuit by the same plaintiff." *Pittman v. Moore,* 980 F.2d 994, 995 (5th Cir. 1993). A district court may dismiss a complaint as malicious if it threatens violence or contains disrespectful references to the court. *Crisafi v. Holland*, 655 F.2d 1305 (D.C. Cir. 1981). Additionally, a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims. *Crusafi*, 655 F.2d at 1309*; Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975); *Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972); *see also Banks v. Gillie,* Civ. No. 03-3098, 2004 WL 5807334 (E.D. La. Feb. 26, 2004) (duplicative and repetitive complaints are considered malicious for purposes of § 1915); *McGill v. Juanita Kraft Postal Serv.,* Civ. No. 3:03-CV-1113-K, 2003 WL 21355439, at *2 (N.D. Tx. June 6, 2003) (complaint is malicious when it "'duplicates allegations of another pending federal lawsuit by the same plaintiff' or when it raises claims arising out of a common nucleus of operative facts that could have been brought in the prior litigation") (quotations omitted).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief

-4-

may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Biggins leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Biggins has a "plausible claim for relief."[8] *Id.* at 211. In other words, the complaint must do more than allege Biggin's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*,129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[8]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

## III. DISCUSSION

### A. Maliciousness

The complaint contains two claims that have been previously raised by Biggins in another case filed in this court, Civ. No. 09-245-GMS, *Biggins v. Markell*. The claims are contained in Count Five that alleges unconstitutional conditions of confinement and include the hazardous, unsafe drinking water claim and the hazardous, unsafe air ventilation systems and dust and mold build-up on ceilings claim. Exhibits of grievances submitted by Biggins, and attached to the complaint, confirm that the claims are identical to those previously raised. (*See* D.I. 1, ex. C(5) grievance # 173998; ex. C(6) grievance #161992.)

The claims duplicate allegations of another federal lawsuit filed by Biggins. Therefore, the court finds that the claims are malicious and they will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Statute of Limitations

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* Del. Code Ann. tit. 10, § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State*, C.A. No. 99-440-JJF, 2001 WL 845654, at *2 (D. Del. July 24, 2001).

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth*

-6-

*Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1167 (3d Cir. 1986). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, *sua sponte* dismissal under 28 U.S.C. § 1915 is permissible." *Smith v. Delaware County Court*, 260 F. App'x 454 (3d Cir. 2008) (not published); *Wakefield v. Moore*, 211 F. App'x 99 (3d Cir. 2006) (not published) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)).

Biggins filed his complaint on November 10, 2009.[9] (D.I. 1.) Exhibits attached to complaint include claims that occurred prior to November 10, 2007. It is clear from the face of the complaint and its attached exhibits that said claims are time-barred. Accordingly, the court will dismiss as time-barred all claims that occurred two years prior to the filing of the complaint.

### C. Americans with Disabilities Act/Rehabilitation Act

The first paragraph of the complaint states that it is a civil action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Cases interpreting the language of the ADA and the Rehabilitation Act conclude that the applicable legal tests created by these statutes are interchangeable. *See Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 551 (D.N.J. 2000). To state a claim for violation of either the ADA or the Rehabilitation Act, Biggins must allege that he: (1) has a disability; (2) is

---

[9]The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Here, Biggins' complaint was signed on November, 10, 2009, and the envelope it was mailed in is post-marked November 11, 2009. The court concludes that Biggins' complaint was filed on November 10, 2009, the date it was signed, and the earliest date possible that it could have been delivered to prison officials in Delaware for mailing.

otherwise qualified to participate in a program; and (3) was denied the benefits of the program or discriminated against because of the disability. *See Millington v. Temple Univ. Sch. of Dentistry,* 261 F. App'x 363, 365 (3d Cir. 2008) (not published). The complaint contains no such allegations. Indeed, the ADA and the Rehabilitation Act are only mentioned in passing in the first paragraph of the complaint. For the above reasons, the court will dismiss the ADA and Rehabilitation Act claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## D. Supervisory Positions/Personal Involvement

The "Claims for Relief" section of the complaint seeks relief against many defendants who are named in the caption of the complaint or in the caption footnote, but who are not mentioned in the body of the complaint. The defendants include T. Carroll ("Carroll"), C. Danberg ("Danberg"), Deallie ("Deallie"), Holsterman ("Holsterman"), R. Kearney ("Kearney"), T. Kline ("Kline"), F. Kromka ("Kromka"), Lyons ("Lyons"), S. McLaughlin ("McLaughlin"), P. Phelps ("Phelps"), "D. Pierce ("Pierce"), M. Rispoli ("Rispoli"), J. Salas ("Salas"), and Smith ("Smith").[10] (D.I. 2, ¶¶ 23-27.) Additionally, P. Smith, K. Bailey, M. Dutton, and R. Dutton are named in the caption, T. Kramer ("Kramer"), C. Powell ("Powell"), and Scott-Knight ("Scott") are listed in the caption footnote, and Biggins later added Savage as a defendant, but otherwise there are no allegations raised against these individuals.

As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[11] *See Iqbal,* 129 S.Ct. 1937; *Monell v. Department of Social*

---

[10]Paragraphs 23, 24, and 27 are directed towards Smith, and do not indicate if the defendant is P. Smith or T. Smith.

[11]In *Iqbal,* the plaintiff alleged that supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption

*Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[12] *Iqbal*, 129 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

The complaint contains no allegations or facts directed towards the defendants P. Smith, R. Dutton, M. Dutton, K. Bailey, Kramer, Powell, Scott, or Savage to support a claim against them. Hence, it is clear the claims are facially insufficient. With regard to the defendants Carroll, Danberg, Deallie, Holsterman, Kearney, Kline, Kromka, Lyons, Mannis, McLaughlin, Phelps, Pierce, Rispoli, Salas, and Smith, it appears that Biggins seeks to hold them liable on the basis of their supervisory positions since, short of naming the defendants in the "Claims for Relief" section, the complaint contains no facts alleging their personal involvement in the alleged wrongs. As is well known, supervisory liability cannot be imposed under § 1983 on a respondeat

---

and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[12]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

superior theory. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). There is nothing in the complaint to indicate that the defendants were the "driving force [behind]" the foregoing list of alleged violations. Moreover, the complaint does not indicate that the defendants were aware of Biggins' allegations and remained "deliberately indifferent" to his plight. *Sample v. Diecks*, 885 F.2d at 1118. For this reason, the court will dismiss the claims against the supervisory defendants.

The claims against P. Smith, M. Dutton, R. Dutton, K. Bailey, Kramer, Powell, Scott, Savage, Carroll, Danberg, Deallie, Holsterman, Kearney, Kline, Kromka, Lyons, Mannis, McLaughlin, Phelps, Pierce, Rispoli, Salas, and Smith claims lack an arguable basis in law or in fact. For the above reasons, the court will dismiss the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Excessive Force/Assault and Battery

Count Four alleges that when Biggins was escorted off the tier on October 9, 2009, Murphy used excessive force when she placed ankle shackles on Biggins too tightly. (D.I. 1, ¶ 11.) He also alleges assault and battery. Sgt. Bailey instructed Murphy to make sure the shackles were secure.[13] Biggins complained to Murphy on two occasions that the shackles were too tight, but she did nothing. Sgt. Bailey accompanied Biggins during the transfer and made comments

---

[13]Count Four does not indicate if Sgt. Bailey is K. Bailey or R. Bailey.

about the credibility of criminals.  Biggins explains that because the shackles were tight, the walk

from Building 21 to Building 18 caused friction that "abrasively removed the skin of the middle

back portions of his heel."  (*Id.* at ¶ 13. n.17.)  There was some bleeding and pus for seven to ten

days, with soreness for about two weeks.  (*Id.*)  Biggins also believed that Murphy was going to

mace him.   (*Id.* at ¶ 11.)

When analyzing an excessive force claim under the Eighth Amendment, the core judicial

inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is

not whether a certain quantum of injury was sustained, but rather whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*See Wilkins v. Gaddy*, – U.S. –, 130 S.Ct. 1175 (2010); *Whitley v. Albers*, 475 U.S. 312, 320-21

(1986) (citations omitted).  Use of force is actionable under § 1983 when it exceeds "that which

is reasonable and necessary under the circumstances."  *Davidson v. O'Lone*, 752 F.2d 817, 827

(3d Cir. 1984).  The court must determine whether the force was applied in good faith by

weighing the following factors:  (1) the need for the application of force, (2) the relationship

between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4)

the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper

the severity of a forceful response.  *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005)

(citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The mere act of handcuffing an inmate does not qualify as a constitutional violation.  *See*

*Jackson v. Cain*, 864 F.2d 1235, 1243-44 (5th Cir. 1989) ("[T]he use of handcuffs or other

restraining devices constitute[s] a rational security measure and cannot be considered cruel and

unusual punishment. . . .  The use of shackles and handcuffs are restraints commonly used on

inmates, even those of a 'preferred' status"); *see also Page v. City of Trenton*, Civ. No. 04-874 SRC, 2005 WL 3588477 (D.N.J. Dec. 29, 2005) ("T]ight[ ] handcuff[ing] coupled with] degrading and defaming verbal harassment" is not a constitutional violation); *compare Patrick v. Vrablic*, Civ. No. 04-CV-73270-DT, 2005 WL 3088346 (E.D. Mich. Nov. 16, 2005) (a violation could be found if handcuffs are placed so tightly as to cause a physical injury, e.g., damage of a wrist, but only if the officer receives due complaints about the pain from the handcuffs and yet refuses to loosen the handcuffs, thus inflicting the injury).

Liberally construing the complaint, Biggins has stated a claim for excessive force and assault and battery against Murphy as to the ankle shackling claim. The mace allegations are frivolous inasmuch as Biggins does not allege that he was actually maced. Sgt. Bailey, however, is not adequately identified. Since it appears plausible that as to Count Four, Biggins might be able to articulate a claim against some or all of the defendants (or name alternative defendants), he will be given an opportunity to amend Count Four. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (not published) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

For the above reasons, the court will dismiss the excessive force and assault and battery mace claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The court will dismiss the claims against Sgt. Bailey for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), but Biggins will be given leave to amend his complaint only as to the excessive force and assault and battery shackling claim. Biggins will be allowed to proceed against Murphy on the excessive force and assault and battery shackling claim.

## F. Conditions of Confinement

Count Five contains a laundry list of conditions of confinement claims, as follows:

Biggins' main lunch portion was not replaced[14]; unsanitary and unsafe conditions due to transporting meals on open air carts[15]; inadequate linen exchange[16]; hazardous, unsafe drinking water; hazardous, unsafe air ventilation systems and dust and mold build-up on ceilings[17]; dirty cells but no cleaning supplies provided and delay in providing soap, toothpaste, and a blanket[18]; no shower for two days, drainage back-flow with a sewer odor, and a leaky shower ceiling[19];

---

[14]On one occasion, Biggins' food tray did not contain the "hotdog" main course. Carter called the kitchen and was informed they had forgotten to pick up the hotdogs. Biggins complained that it was a complete negligence of duty not to bring him his food. (D.I. 1, ex. C(1).)

[15]Biggins submitted grievances complaining that the open air carts used to serve food violate state and federal health and safety guidelines for food service. (*Id.* at ex. C(3).)

[16]Biggins' grievances indicate that on June 16, 2009, he was given dingy and stained sheets with no pillow case, blankets, or a pillow. (*Id.* at ex. C(4).)

[17]As previously discussed, the court will dismiss as malicious the unsafe drinking water; hazardous, unsafe air ventilation systems and dust and mold build-up on ceilings claims.

[18]Biggins was transferred to a different cell on October 9, 2009. He alleges that the cell was cold and dirty and there was a delay in his receipt of soap, toothpaste, and blanket. (*Id.* at ¶ 12; n.14.) Biggins received a blanket later in the evening and was told that the cells are kept at 76.1 degrees. (*Id.* at n.14.) Biggins was able to clean the cell with items in his cell. On October 18, 2009, he was transferred to new building and cell. He alleges that the cell was dirtier than his last one and asked for cleaning supplies, but they were never received. Biggins used the items he had available in the cell and cleaned it himself. He received a blanket that evening and toilet paper, toothpaste, and soap the next day. Biggins complained on August 18, 2008, that he was not provided with bleach soap balls or Comet for cleaning.

[19]Biggins was not provided a shower for two days. He alleges that when he showered, there was a back-flow from the drain with a pungent sewage odor and the correctional officers moved him to a downstairs shower but water leaked through the ceiling.

-13-

required to stand for forty-five minutes in a shower with backed-up sewage water[20]; no building heat[21]; no hot water for showers, completely cold water on Tuesdays, and medium warm water on other days[22]; inadequate cell plumbing[23]; ripped mattress[24]; continuous lighting[25]; and unsanitary living conditions.[26] (*Id.* at ¶¶ 11-14, 18.)

---

[20]Biggins also complained that during his October 18, 2009 shower, there was a pungent odor, and he had difficulty in breathing and nauseousness. (*Id.* at exs. D(1) , D (2.)).

[21]Biggins submitted two grievances complaining of lack of heat. (*Id.* at exs. D(3), (4).) On one occasion, the lack of heat was due to maintenance of the building. Biggins complained that the heat was not on 24/7 and not at 71 degrees as required for all state buildings.

[22]Biggins is allowed three showers per week. His grievances indicate that the hot water is turned off every Tuesday and does not get hot until 6:30 or 7:00 p.m. Biggins was advised that the steam is shut off on Tuesday and that he could request a shower on one of his other recreation days. (*Id.* at exs. D(6)-(9).) He also complains that the water is medium warm at all other times.

[23]Biggins' grievance, dated December 18, 2008, complained that maintenance did not make repairs in a timely manner. Biggins had placed a work order on December 14, 2008, for hot water, a partially stopped-up sink, and "hardly no sink water pressures." (*Id.* at exs. D(10)-(16).) Biggins was told that the work order had been submitted and that parts needed to be ordered. Biggins complained on January 5, 2009, that the hot water had not been fixed. An investigation revealed that Biggins had warm water, not hot, and it stayed warm for a few seconds. It appears from the grievance investigation that the hot water was repaired.

[24]On September 1, 2008, Biggins was transferred to Building 17, Lower, Tier B, Cell 7, and the cell contained an uncovered mattress that was mildewed and damp. (*Id.* at ex. D(17)-(18).) He complained and was told that there were no more mattress, but the correctional officer offered to remove the mattress so that Biggins could sleep on "the steel." After two shifts had passed, nothing had changed. Biggins is no longer housed in Building 17.

[25]The continuous lighting claim is time-barred. (*See* D.I. 1, exs. D(21)-D(22) grievance #112003 dated Apr. 23, 2007.)

[26]Apparently, following an inmate revolt, that involved human feces, urine, and other items disbursed throughout the tier, Biggins complained on October 13, 2008 of unsanitary housing conditions because the tier was cleaned with bleach, but the front and back steps were not cleaned. (*Id.* at exs. D(23)-(31).) The grievance response indicates that proper cleaning occurred.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Biggins alleges numerous objectionable conditions of confinement that include lack of hygiene and/or sanitation and sewer back-ups. The denial of "basic sanitation . . . is 'cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose.'" *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The allegations, however, do not allege sufficient personal involvement in the denial of inhumane conditions of confinement. For instance, Biggins fails to allege that the defendants named in Count Five had any involvement in the maintenance of prison cells, plumbing, or sewer maintenance.

Moreover, while Biggins sets forth a litany of complaints regarding his conditions of confinement, for the most part, they fall under the auspices of negligence. Mere negligence claims do not constitute "deliberate indifference." *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999); *see also Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Notably, the allegations do not indicate that the defendants named in Count Five were aware of a risk of a serious injury that could occur and purposefully failed to take appropriate steps. While it seems at times that the prison complied with constitutional standards at the most basic level, the allegations do not indicate that Biggins' health and safety were at risk. *See Hassine v. Jeffes*, 846 F.2d 169, 174-75 (3d Cir. 1988); *see also Guinn v. Rispoli*, 323 F. App'x 105, 109 (3d Cir. 2009) (not published).

Also, Biggins complains of isolated events, none of which amounted to an extreme deprivation, and none of which occurred for an extended period of time. These short deprivations do not amount to the kind of extreme deprivation required to make out a conditions-of-confinement claim. *Booth v. King*, 228 F. App'x 167, 171-72 (3d Cir. 2007) (not published); *see e.g., Peterkin v. Jeffes*, 855 F.2d 1021, 1026-27 (3d Cir. 1988) (holding that sleeping on a dirty mattress on the floor does not rise to the level of an Eighth Amendment violation); *Brookins v. Williams*, 402 F. Supp. 2d 508 (D. Del. 2005) (finding no constitutional violation where, over a period of five days, a pre-trial detainee was placed in a cell with two other inmates, forced to eat near the toilet, and prohibited from exercise). Finally, in most instances, Biggins does not allege that he suffered any physical injury. The Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

For the above reasons, the court will dismiss the conditions of confinement claims raised in Count Five as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(e).

### G. Access to Courts

Counts One, Three, and Eight allege denial of access to the courts. Count One alleges that on September 23, 2009, Biggins submitted a letter/petition for photocopying. (D.I. 1, ¶¶ 3-6.) The petition was intended to place all executive in-house and state administrative officials on notice of the alleged unconstitutional practice of the lack of toilet facilities during recreation period. When he had not received the requested copies, Biggins made inquiry to Kemp, Little, and Smith and was informed that the legal document had been confiscated for security concerns. Biggins believed that the document had been forwarded to Castello, but an October 1, 2009 response from Castello indicated that he had not received the document. Biggins grieved the matter and was told that it was "non-grievable."

Count Three alleges that on October 9, 2009, Biggins was transferred and given three to four trash bags for his items but needed additional bags because his "legal property" needed to come with him. (*Id.* at ¶ 10.) Barrett, who was accompanied by Sieani, told Biggins to separate what he might need from his other items to make sure it went with him to his new housing assignment. In the meantime Sgt. Bailey asked Little if Biggins was allowed to take ten bags of "stuff" with him. Little responded negatively and told Sgt. Bailey the amount was excessive and to tell Biggins he had five days to contact Scarborough or the warden with what he wished to keep or everything would be destroyed.

Count Eight alleges that when Biggins was escorted off the tier on October 14, 2009, Trader was waiting with eight large manilla envelopes and informed Biggins that his legal materials were bagged up and placed in the "barber shop" room for him to sort through per the instructions of Scarborough and Hawkins. (*Id.* at ¶ 16.) Biggins had access to legal materials for

-17-

Civ. No. 09-245-GMS. Biggins was told that legal materials belonging to other inmates would be returned to the inmates whose names were on the material. Biggins had previously written to Engram with information for several open cases, but Engram only verified one open case.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). However, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access.[27] The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U .S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court").

The allegations in Counts One, Three, and Eight do not indicate that Biggins has suffered an "actual injury" as is required to establish a violation of the First Amendment right of access to the courts. There are no allegations that his documents were destroyed, that he missed deadlines, or there was a "loss or rejection of a legal claim." *See Oliver v. Faaver*, 118 F.3d 175, 177 (3d Cir. 1997). It is evident from the allegations that prison officials sought to assist Biggins in determining what documents he could keep in accordance with prison regulations and that

---

[27]An actual injury is shown only where a nonfrivolous, arguable claim is lost. *Christopher v. Harbury,* 536 U.S. 403, 415 (2002).

Biggins receives on-going legal assistance. Indeed, Biggins was afforded an opportunity to verify his own, but not other inmates', pertinent legal materials. Finally, the petition that Biggins intended to present to the governor appears frivolous and raised a security concern.

The access to the court claims in Counts One, Three, and Eight have no basis in law or fact. For the above reasons, they will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## H. Retaliation

Counts Two, Three, Six, Seven, and Eight contain numerous retaliation claims that, for the most part, allege retaliation as a result of grievances submitted by Biggins. "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Id.* (citations omitted); *see also Kelly v. York County Prison*, 340 F. App'x 59 (3d Cir. 2009) (not published).

Count Two raises non-frivolous and cognizable retaliation claims against the defendants Willey, Carter, Gomez, Rose, and Heddinger.[28] (D.I. 1, ¶ 17.) Biggins will be allowed to

---

[28]Count Two alleges that on October 1, 2009, Biggins was interviewed by Willey after he filed grievances and complained of the failure of building officers to wear protective clothing when serving food. Shortly after the interview, Willey informed Biggins he would be written up for wearing a broken identification wrist band. Willey ordered Carter and Gomez to shake down and search Biggins' cell and to write him up for the wrist band violation. (D.I. 1, exs. A(7),

proceed against the foregoing defendants. Count Three alleges a retaliatory transfer as a result of the grievances Biggins filed. Sgt. Bailey told Biggins that he was being transferred "per" Willey. Count Three does not indicate what grievances Biggins submitted to precipitate the alleged retaliation. Therefore, the court will dismiss Count Three for failure to state a claim upon which relief may be granted. Since it appears plausible that Biggins might be able to articulate a claim against some or all of the defendants (or name alternative defendants), Biggins will be given leave to amend the retaliation claim contained in Count Three.

Counts Six, Seven, and Eight are frivolous and will be dismissed. Count Six alleges that following his transfer to Building 21 on October 11, 2009, Biggins was informed by Benson of a finding of guilt on all three counts of the disciplinary violations Biggins had received and that Biggins would be placed in isolation for thirty days. (D.I. 1, ¶ 14.) At the time, Biggins made complaints regarding his ankle injury he sustained when he was shackled. Biggins alleges that Little, who was present, would not make a report or take photographs. The allegations do not rise to the level of a retaliation violation.

Count Seven alleges that on the morning of October 11, 2009, Carter and Rose spoke to Biggins' new cell-mate in an effort to intentionally cause harm to Biggins in retaliation for the grievances he submitted.[29] (*Id.* at ¶ 15.) There are no allegations that Biggins was attacked or assaulted by his new cell-mate and, therefore, the claim fails. Count Eight alleges that on

___

A(8).) On October 4, 2009, Biggins complained that the officers serving lunch were not wearing hair covering. Three days later, he received a write-up for a laundry list of violations. The next evening Biggins was told by Heddinger that he would conduct a preliminary hearing for the Class I write-up prepared by Willey. (*Id.* at ex. A(27).) The write-up was a result of a letter/petition Biggins drafted to present to the Governor of Delaware.

[29]Biggins also refers to this as instigated inmate assault/retaliation.

October 15, 2009, Biggins spoke to Daum regarding his confiscated legal materials and Daum informed Biggins that he was told by Scarborough and Hawkins not to get involved. (*Id.* at ¶ 17.) Similar to the other retaliation claims, the allegations do not rise to the level of a constitutional violation.

For the above reasons, the court will allow Biggins to proceed with his retaliation claim in Count Two against the defendants Willey, Carter, Gomez, Rose, and Heddinger. The court will dismiss the retaliation claim in Count Three for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), but will give Biggins leave to amend the Count Three retaliation claim. Finally, the court will dismiss the retaliation claims in Counts Six, Seven, and Eight as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## I. Grievances

Count Five alleges that Dutton often denies Biggins' grievances.[30] (D.I. 1, ¶ 12.) It also appears from exhibits attached to the complaint that Biggins named certain individuals as defendants based upon their investigations of grievances he filed.

"[T]he filing of prison grievances is a constitutionally protected activity." *Winn v. Department of Correc.,* 340 F. App'x 757, 759 (3d Cir. 2009) (not published) (quoting *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)). However, "[w]hen the claim underlying the administrative grievance process involves a constitutional right, the prisoner's right to petition the government for redress is the right to access the courts, which is not compromised by the

---

[30]Count Five is directed towards Mr. Dutton, but does not indicate if this refers to M. Dutton or R. Dutton.

prison's refusal to entertain his grievance." *Winn,* 340 F. App'x at 759 (quoting *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991).

To the extent that Biggins bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a constitutionally protected right to a grievance procedure. *Caldwell v. Beard,* 324 F. App'x 186, 189 (3d Cir. 2009) (not published) (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)). To the extent that Biggins' complains of the investigations of his grievances they, too, do not state a constitutional claim. *See Gay v. Shannon,* 211 F. App'x 113, 116 (3d Cir. 2006) (not published) (citing *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (holding allegedly inadequate grievance procedures did not give rise to a constitutional claim); *see also Hurley v. Blevins,* Civ. No. 6:04CV368, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005)(the failure to investigate a grievance does not raise a constitutional issue.) Finally, the denial of grievance appeals do not in themselves give rise to constitutional claims as Biggins is free to bring a civil rights claim in District Court. *Winn,* 340 F. App'x at 759 (citing *Flick v. Alba,* 932 F.2d at 729).

Biggins cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate. For the above reasons, the court will dismiss the grievance claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### J. Due Process

Counts Two and Five raise due process claims. Count two alleges that R. Bailey served Biggins a write-up "under the guise of a preliminary hearing," and that R. Bailey answered for Biggins that Biggins did not want to face his accusers or have witnesses. When Biggins

challenged him on the issue, he was told by R. Bailey that he was not entitled to face his accusers or have witnesses. (D.I. 1, ¶ 7.) Count Five alleges that Benson denied Biggins' right to due process during a disciplinary hearing held on October 9, 2009. (*Id.* at ¶ 13.) The gist of the allegations is that Biggins was subjected to disciplinary confinement without due process of law. As a result of the disciplinary hearing, Biggins received thirty days in isolation. (*Id.* at ¶ 14.)

Biggins' claim that he was denied due process lacks legal merit. It is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff v. McDonnell*, a prisoner must be deprived of a liberty interest.[31] *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed." *Sandin v. Conner*, 515 U.S. 472 (1995). Prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).

Thirty days in isolation is not an atypical or significant deprivation that would give rise to a liberty interest under *Sandin*. Hence, Biggins' inability to face his accusers or to call witnesses,

---

[31]Prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 at 563-71; *Griffin v. Spratt,* 969 F.2d 16, 19-20 (3d Cir. 1992).

as well as any other alleged procedural defects, lack legal significance in the absence of any protectable interest. *See Sandin*, 515 U.S. at 487; *see also Williams v. Bitner*, 307 F. App'x 609 (3d Cir. 2009) (not published). Based upon the relatively short time Biggins was confined to isolation (i.e., thirty days), he lacks the requisite liberty interest to implicate a due process violation. As Biggins has not articulated a protected liberty interest, the court will dismiss his due process claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## K. Medical Needs

It appears that Biggins may be raising a medical needs claim based upon the treatment he received for his ankle injuries. The heading for Count Five refers to "medical treatment," but Count Six discusses his medical treatment. (D.I. 1, ¶¶ 11, 14.)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d

-24-

Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Even when reading the complaint in the most favorable light to Biggins, he fails to state an actionable medical needs claim. Benson told Little to make sure that Biggins received medical treatment, and Biggins was seen by a nurse and prescribed of triple antibiotic ointment for the wound. (*Id.* at ¶ 14.) The allegations do not rise to the level of a constitutional violation. Therefore, the court will dismiss the medical needs claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## IV. MISCELLANEOUS REQUESTS

The court received a letter from Biggins on March 24, 2010, wherein he requested twenty witness subpoenas. (D.I. 15.) A federal court has the inherent power to protect anyone from oppressive use of process, even if no oppression is actually intended. *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (citation omitted). Biggins does not provide the names of the witnesses nor does he indicate why their testimony is required. Moreover, the court has dismissed the majority of Biggins' claims and it may be that the testimony of the unnamed witnesses are unnecessary. Therefore, the court will deny without prejudice the request for subpoenas. (D.I. 15.)

On April 9, 2010, the court received a letter from Biggins wherein he indicates his understanding that the clerk of court will provide him with free photocopies of exhibits as he has

no means of photocopying. Biggins filed this case and it is his responsibility to provide copies to the court and the parties of record. The clerk of court does not provide free photocopying.

## V. CONCLUSION

For the above reasons, the court will allow Biggins to proceed on the retaliation claim in Count Two against the defendants Willey, Carter, Gomez, Rose, and Heddinger and the excessive force and assault and battery claims in Count Four against the defendant Murphy. The court will dismiss the retaliation claim in Count Three and the excessive force and assault and battery claim in Count Four for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Biggins will be given leave to amend said claims. If an amended complaint is not filed within the time set forth by the court, then the case will proceed on the claims in Count Two and Count Four as heretofore discussed. The court will dismiss all remaining defendants and remaining claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and concludes that amendment of said claims would be futile. The request for subpoenas will be denied without prejudice. (D.I. 15.)

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

__May 25__, 2010
Wilmington, Delaware

-26-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES ARTHUR BIGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 09-862-GMS |
| | ) |
| C. DANBERG, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 25th day of _____ Mery _____, 2010, for the reasons set forth in the Memorandum issued this date

1. The plaintiff James T. Biggins has satisfied the filing prerequisites of 28 U.S.C. § 1915A and the court has identified at this time what appear to be non-frivolous and cognizable claims within the meaning of 28 U.S.C. § 1915A(b) on the retaliation claim in Count Two against the defendants R. Willey, R. Carter, Louis Gomez, Rose, and E. Heddinger and the excessive force and assault and battery ankle shackling claims in Count Four against the defendant Murphy.

2. The retaliation claim in Count Three and excessive force and assault and battery ankle shackling claims in Count Four are **dismissed** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The plaintiff is given leave to amend said claims as set forth in the body of the Memorandum issued this date. The amended complaint shall be filed within **thirty (30) days** from the date of this order. If an amended complaint is not filed within the time allowed, then the case will proceed on the claims as set forth in Paragraph One of this order.

3. The remaining defendants and remaining claims are **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

4. The request for subpoenas is **denied** without prejudice. (D.I. 15.)

CHIEF, UNITED STATES DISTRICT JUDGE