IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ARTHUR BIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. Action No. 09-862-GMS | |
| | ) | |
| R. WILLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

The plaintiff, James Arthur Biggins ("Biggins"), an inmate at the James T. Vaughn Correctional Center ("VCC), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 1.)  He also raises supplemental state claims.  (D.I. 1.)  Biggins appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (D.I. 13.)  The court has jurisdiction pursuant to 28 U.S.C. 1331.  Before the court is the defendants' motion for summary judgment (D.I. 173) and Biggins' motion for an emergency temporary injunction, order of restraining and motion for stay on defendants' motion for summary judgment (D.I. 184).

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 25, 2010, the court screened the complaint and dismissed several claims and defendants.  (*See* D.I. 22, 52.)  The case proceeds on the original complaint on Count Two, a retaliation claim against the defendants Roland Willey ("Willey"), Roman Carter ("Carter"), Louis Gomez ("Gomez"), Troy Rose ("Rose"), and Edward Heddinger ("Heddinger"), and on Count Four, excessive force and assault and battery ankle shackling claims against the defendant Ruby Murphy ("Murphy").

On October 18, 2012, the defendants moved for summary judgment. (D.I. 173.) On November 13, 2012, Biggins wrote the court and requested the status of the case, and on December 10, 2012, Biggins filed a motion to extend the time to respond to the motion. (D.I. 175, 177.) The court granted the motion on June 21, 2013 and gave Biggins until July 22, 2013 to respond to the motion. (D.I. 183.) Biggins was warned, "[n]o further extensions will be considered by the court." (*Id.*) Biggins did not file a response to the motion for summary judgment. Instead, on July 22, 2013, he filed a motion for an emergency temporary injunction, order of restraining and motion for stay on defendants' motion for summary judgment. (D.I. 184.)

Count Two of the complaint alleges that on October 1, 2009, Biggins was interviewed by Willey after he filed grievances and complained of the failure of building officers to wear protective clothing when serving food. (D.I. 1, ¶ 7.) Shortly after the interview, Willey informed Biggins he would be written up for wearing a broken identification wrist band. Willey ordered Carter and Gomez to shake down and search Biggins' cell and to write him up for the wrist band violation. (D.I. 1, exs. A7-A8.) On October 4, 2009, Biggins complained that the officers serving lunch were not wearing hair covering. Three days later, he received a write-up for a laundry list of violations. The next evening Biggins was told by Heddinger that he would conduct a preliminary hearing for the Class I write-up prepared by Willey. (*Id.* at ex. A27.) The write-up was a result of a letter/petition Biggins drafted to present to the Governor of Delaware.

Count Four of the complaint alleges excessive force and assault and battery when Murphy placed ankle shackles on Biggins too tightly and escorted him off the tier in early October 2009. (D.I. 1, ¶ 11.) Sgt. Bailey ("Bailey"), who was dismissed as a defendant, instructed Murphy to

make sure the shackles were secure. Biggins complained to Murphy on two occasions that the shackles were too tight, but she did nothing. When Biggins arrived at his new cell he took off his socks to use them to clean the cell. (*Id.* at ¶ 12.) At that time he discovered blood and pus on the socks around the middle back of his heels. (*Id.*) Biggins explains that because the shackles were tight, the walk from building # 21 to building # 18 caused friction that "abrasively removed the skin of the middle back portions of his heel." (*Id.* at ¶ 13. n.17.) There was some bleeding and pus for seven to ten days, with soreness for about two weeks. (*Id.*) Biggins was seen by medical on or about October 11, 2009, treated, and provided with antibiotic ointment. (*Id.* at ¶ 14.)

The record reflects that Biggins began his incarceration in the Delaware Department of Correction ("DOC") on November 11, 1996, with an expected release date of November 22, 2026. (D.I. 174, ex. A.) According to James Scarborough ("Scarborough"), deputy warden at the VCC, when Biggins was housed in maximum security, he was subject to cell and tier inspections and/or shakedowns at any time without prior notice given. (*Id.* at ex. C.) In addition, Biggins is responsible for the items found in his cell, on his person, or within his control and, thus, is responsible for any contraband found. (*Id.*) The DOC and the VCC strictly prohibit the introduction, possession and trafficking of contraband in the VCC. (*Id.*) In addition, unauthorized communications between inmates is considered a security threat. (D.I. 128, ¶ 2.) The DOC has implemented standard operating procedures for all employees assigned to work at the VCC to control contraband and to provide for the handling of contraband. (D.I. 174, ex. C.)

On September 17, 2009, Biggins submitted to the law library for copying a petition/ complaint to the Governor of the State of Delaware. (D.I. 1, ex. A4.) On September 23, 2009, Biggins submitted a grievance complaining that the materials had not yet been returned. (*Id.*)

3

On September 24, 2009, Biggins submitted a grievance complaining of unsanitary and unsafe

food servicing practices. (*Id.* at ex. A6.) On September 29, 2009, Biggins was advised that his

petition/complaint to the Governor had been confiscated due to security concerns. (*Id.* at ex. A1-

A3.)

On October 1, 2009, Willey authorized Carter and Gomez to search Biggins' cell because

contraband was observed in Biggins' cell. (D.I. 128, ¶¶ 4-5.) During the shakedown of Biggins'

cell, Carter and Gomez discovered a state issued wristband and medication (both unauthorized

items) and, as a result, Biggins received a disciplinary report for those, as well as other,

violations. (D.I. 1, ex. A7.; D.I. 152, resp. 1-3.) A hearing was held on October 6, 2009, and

Biggins was found guilty of three infractions and not guilty of two infractions. (D.I. 174, ex. C,

attach. 1.) Biggins appealed, but the appeal was denied. (*Id.*) He was sanctioned to ten days

confinement. (*Id.*) Gomez conducted a second routine shakedown of Biggins' cell on October 7,

2009. (D.I. 1, ex. A18; D.I. 152, resp. 1-3.) Again, Biggins received a disciplinary report for

possession of contraband and disorderly and threatening behavior, as well as other infractions.

(D.I. 1, ex. A18.) The next day, October 8, 2009, Biggins received another disciplinary report for

authoring and distributing a petition throughout the Maximum Security Housing Unit following

an investigation commenced on September 24, 2009 by Willey. (D.I. 1, ex. A27.) Biggins

considered the material as "legal material" and indicated that he did not need permission to

communicate with other inmates. Biggins was found guilty and sanctioned to thirty days loss of

all privileges. (D.I. 103, D30.) His appeal was denied. (D.I. 103, D32.)

On October 9, 2009, Biggins was informed by Willey that he was being temporarily,

administratively transferred to a higher security as a result of findings that warranted his

4

confinement to a more restrictive setting. (D.I. 174, ex. B.)  Biggins provided an inmate statement in response to the administrative transfer.  Therein he stated that he had been "retaliated and harassed by #21 building correctional officers, staff and th[e] prison administration for [his] redress of grievances and a complaint to the Governor." (D.I. 174, ex. B.)  Biggins goes on to state that, "in less than a week" Willey allowed, participated, and instructed four shakedowns that resulted in several write-ups. (*Id.*)

Rose denies participating in any retaliatory practices against Biggins. (D.I. 131, ¶ 1.)  He is unaware of any retaliatory correctional staff members practices performed on Biggins while housed in building #21 during May of 2009 through March 21, 2010. (D.I. 131, ¶ 5.)  Murphy neither witnessed correctional staff members, nor participated in any retaliatory practices against Biggins when he was housed in building #21. (D.I. 125, ¶ 8.)  Gomez and Carter did not consider that actions taken by them while performing daily correctional officer duties were retaliatory. (D.I. 126, ¶ 7; D.I. 152, resp. 7.)

According to Rose, Biggins caused and/or created problems for correctional staff members in building #21. (D.I. 131, ¶ 8.)  Biggins complained of standard operation procedures every week while he was housed there. (D.I. 131, ¶ 9.)  Rose suggested that Biggins submit a grievance if he had a problem with the policies. (*Id.*)  Gomez never had a problem with Biggins' conduct prior to October 1, 2009, and Murphy does not recall having any problems with Biggins when she worked in building #21. (D.I. 125, ¶ 9; D.I. 152, resp. 8.)  Carter does not have problems with inmates housed in the VCC. (D.I. 126, ¶ 9.)  A review of grievances and appeals filed by Biggins indicates that he submitted 153 grievances from January 1, 2009 to January

5

2010. (D.I. 174, ex. D.) Biggins submitted 356 grievances from January 1, 2009 to October 17, 2012. (*Id.*)

The administrative transfer took place on October 10, 2009. In preparation for the transfer Murphy handcuffed and shackled Biggins. (D.I. 125, ¶ 1.) Sgt. Bailey ("Bailey") was present. (D.I. 125, ¶ 3.) Biggins was cuffed and doubled locked so the cuffs could not go any tighter on him. (D.I. 125, ¶ 2.) He was also shackled, and like the cuffs, the shackles were doubled locked. (D.I. 125, ¶ 2.) The cuffs and shackles are double locked to prevent tightening or loosening. (D.I. 168, resp. 1-2.) According to Murphy, at no time did Biggins state that the shackles were too tight. (D.I. 125, ¶ 4.) To tell if handcuffs or shackles are pressing too tight, Murphy is trained to observe the inmate's movements, along with other unspecified methods. (D.I. 168, resp. 3.)

Biggins submitted a grievance on October 16, 2009, complaining that when he was being transferred by Bailey and Murphy, he advised Murphy that the shackles were on too tight, but "she did not care and clamped down tighter." (D.I. 1, ex. C17.) After the transfer, Biggins noticed that his ankles were bleeding. (*Id.*) On October 11, 2009, Biggins complained to prison personnel about the conduct of Bailey and Murphy. (*Id.*) No photographs were taken of his injury but it was indicated that he would see medical. (*Id.*)

The defendants move for summary judgment on the grounds that: (1) Biggins cannot satisfy the elements of a retaliation claim; (2) the record does not support an excessive force claim; (3) there is no constitutional claim against Rose; and (4) the defendants have qualified immunity. Biggins did not respond to the motion. However, his March 6, 2013 affidavit asks

6

the court to deny the defendants' motion for summary judgment due to the defendants

"continuous egregious conduct of retaliation." (D.I. 179.)

## II. MOTION FOR INJUNCTIVE RELIEF AND TO STAY

The court turns first to Biggins' motion for injunctive relief and to stay a ruling on the

defendants' motion for summary judgment. Rather than respond to the defendants' motion for

summary judgment, Biggins filed the instant motion.

A party seeking a preliminary injunction must show: (1) a likelihood of success on the

merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting

preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the

public interest favors such relief. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.

2004) (citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should

be granted only in limited circumstances.'" *Id.* (citations omitted). "[A]n injunction may not be

used simply to eliminate a possibility of a remote future injury, or a future invasion of rights."

*Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (quoting

*Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). "The relevant

inquiry is whether the movant is in danger of suffering irreparable harm at the time the

preliminary injunction is to be issued." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264

(3d Cir. 1985). Because of the intractable problems of prison administration, a request for

injunctive relief in the prison context must be viewed with considerable caution. *Abraham v.

Danberg*, 322 F. App'x 169, 170 (3d Cir. 2009) (unpublished) (citing *Goff v. Harper*, 60 F.3d

518, 520 (8th Cir. 1995)).

Biggins filed his motion on July 22, 2013. Therein he complains of retaliation because "over the last six months he been under constant attack". The motion and its exhibits refer to alleged acts taken by the defendants and non-parties on February 18, 22, 2013, March 6, 2013, and early July 2013. (D.I. 184, exs. A-D)  While Biggins was serving a sanction from July 8, 2012 to July 22, 2013, he received another write-up for failure to abide by sanctions or conditions. Having reviewed the motion and its attachments, the court finds that Biggins has not demonstrated that injunctive relief is appropriate. More particularly, Biggins has not demonstrated the likelihood of success on the merits or irreparable harm. Therefore, the court will deny the motion for injunctive relief. Further, the court will deny the motion to stay (a ruling) on the defendants' motion for summary.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams*

*v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Despite Biggins' failure to respond to the motion for summary judgment, the Court will not grant the entry of summary judgment without considering the merits of the defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

9

## B. Discussion

### 1. Retaliation

Count Two alleges that Willey, Carter, Gomez, Rose, and Heddinger retaliated against Biggins after he submitted grievances and made written and oral complaints. The defendants move for summary judgment on the grounds that there is no causal link between the protected conduct and the adverse action taken against Biggins. In addition, they argue that Biggins received infractions due to conduct that violated prison rules.

"[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Id.* (citations omitted); *see also Kelly v. York Cnty. Prison*, 340 F. App'x 59 (3d Cir. 2009) (unpublished). *See also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d

494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

The first element of Biggins' retaliation claim is that he engaged in protected conduct when he submitted grievances and complained, both written and oral. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished). Even assuming that Biggins has made a showing sufficient to demonstrate that he engaged in constitutionally-protected activity, the court cannot find that his claims that his cells were searched, that he received disciplinary reports, and was sanctioned are the kind of adverse action that would deter a prisoner of ordinary firmness from exercising his constitutional rights; in fact, it is clear that these actions did not deter Biggins from exercising his rights to file a multitude of grievances - over 350 in a three year period.

In addition, even had Biggins sufficiently demonstrated that the actions taken against him were sufficient to deter him from exercising his constitutional rights, the defendants have presented legitimate, non-retaliatory reasons that the disciplinary actions would have been taken even in the absence of protected activity. Here, Biggins was found guilty of the underlying disciplinary infractions, following full and final administrative hearings. As a matter of law, the findings of guilt establishes that the charges were not false, and satisfies the defendants' burden

11

of showing that they would have given Biggins' disciplinary reports even in the absence of the

protected activity. *See Mearin v. Dohman*, __F. App'x__, 2013 WL 3988673 (3d Cir. Aug. 6,

2013) (unpublished) (defendants entitled to summary judgment on retaliation claim by meeting

their burden of showing, as a matter of law, that even in the absence of the alleged protected

conduct, charges would have been brought against inmate for reasons reasonably related to a

legitimate penological interest); *Walker v. Campbell*, 2011 WL 6153104, at *7 (W.D. Pa. Oct.

31, 2011) ("The filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as

prohibited 'retaliation' unless the report is, in fact, false.  In other words, the finding of guilt of

the underlying misconduct charge satisfies a defendant's burden of showing that he would have

brought the misconduct charge even if plaintiff had not [engaged in protected conduct]."); *Harris

-Debardelaben v. Johnson*, 121 F.3d 708 (6th Cir. July 31, 1997) (affirming summary judgment

in the absence of any indication that disciplinary charges were false or that appellant suffered any

impediment in his ability to file grievances); *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.

1998) (affirming summary judgment where record demonstrated that the prisoner in fact

committed the most serious, if not all, of the prohibited conduct charged in the misbehavior

report, and thus the defendants met their burden of demonstrating proper, non-retaliatory reasons

for filing the misbehavior report); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (a

finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the]

retaliation claim."); *see also Carter v. McGrady*, 292 F.3d 152 (3d Cir. 2002) (noting that even if

prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of

the plaintiff's misconduct offenses to conclude that the misconducts would have been issued

notwithstanding his jailhouse lawyering).

Biggins received several disciplinary reports and was found guilty. Biggins has not countered this showing. Accordingly, the court finds that summary judgment is appropriate as to the retaliation claim found in Count Two of the Complaint.

### 2. Excessive Force

Count Four alleges that when Biggins was escorted off the tier on October 10, 2009, Murphy used excessive force and committed assault and battery when she placed ankle shackles on him too tightly. The defendants move for summary judgment on the grounds that there is no evidence that Murphy applied force maliciously and sadistically for the purposes of causing harm and Biggins cannot demonstrate that he suffered more than a de minimis injury.

When analyzing an excessive force claim under the Eighth Amendment, the core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984). The court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

13

The evidence before the court insufficient for an excessive-force claim. "Not every push or shove" violates an inmate's Eighth Amendment rights. *Hudson*, 503 U.S. at 9 (internal citation omitted). The Eighth Amendment does not protect an inmate against an objectively de minimis use of force. *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002). "Handcuffing inevitably involves some use of force," *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006), and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied, *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more. *See Fears v. Beard*, __F. App'x __, 2013 WL 3834399 (3d Cir. July 25, 2013) (affirming summary judgment when the record did not reflect that the inmate was handcuffed for any reasons other than institutional safety and security); *Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2009) (holding that a handcuffing case requires a showing of an actual, non de minimis physical, emotional, or dignitary injury to succeed on a claim).

Here, Biggins was shackled upon his transfer to a different a different housing assignment. According to Murphy, she shackled Biggins in accordance with DOC policies. Although Biggins claims he told Murphy that the shackles were too tight, she states that she never heard him make the statement. Notably, even if Biggins complained that the shackles were too tight, there is nothing in the record to reflect that Biggins indicated to Murphy, at any time, that he was in pain or that Murphy knew he was in pain. Indeed, it was not until he removed his socks in his new cell that Biggins discovered his heels had been bleeding. When Biggins complained to prison officials a day later, he did not complain of pain, although he indicated that he had been injured. His injuries were treated with antibiotic ointment.

In general, a single complaint relating to tight handcuffs is not sufficient to show that the handcuffing constituted excessive force. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (affirming summary judgment where the plaintiff complained only once about his cuffs being too tight but never elaborated on his complaint); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (arresting officer entitled to summary judgment when arrestee complained that handcuffs too tight only once, experienced redness on wrists for less than two days, and did not receive medical care). Moreover, there is no evidence that Murphy was aware that the shackles were too tight. Nor is there any evidence that Murphy took any action other than to shackle Biggins during the transfer to his new housing unit. The facts simply are not sufficient to raise a genuine issue of material fact regarding whether Murphy used excessive force and no reasonable jury could find for Biggins on the excessive force issue. Therefore, the court will grant the defendants' motion for summary judgment as to this claim.

## IV. SUPPLEMENTAL CLAIM

Because the complaint will grant summary judgment as to the federal claims, the court declines to exercise jurisdiction over Biggins' supplemental state law claim. 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

## V. CONCLUSION

For the above reasons, the court will grant the defendants' motion for summary judgment (D.I. 173) and will deny the plaintiff's motion for an emergency temporary injunction, order of restraining and motion for stay on defendants' motion for summary judgment (D.I. 184).

An appropriate order will be entered.

_____, 2013
Wilmington, Delaware

_____
CHIEF, UNITED STATES DISTRICT JUDGE